UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| Clark, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Edwards, *et al.*,<br><br>        Defendants,<br><br>                c/w<br>Power Coalition for Equity and Justice, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>John Bel Edwards, the Governor of the State of Louisiana, in his Official Capacity, *et al.*,<br><br>        Defendants, | Civil Action: 20-cv-308-SDD-RLB<br><br><br><br><br><br><br><br><br><br>Civil Action: 20-cv-283-SDD-RLB |

**DEFENDANT ATTORNEY GENERAL JEFF LANDRY'S AND THE STATE OF LOUISIANA'S REPLY TO PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Defendant, Jeff Landry, in his official capacity as Attorney General of Louisiana and on behalf of the State of Louisiana (hereinafter the "State"), by and through its counsel, hereby files this Reply to Plaintiffs' Joint Memorandum in Opposition to Jurisdictional arguments in State's and Parish Registrars of Voters' Motions to Dismiss[1].

---

[1] Pursuant to the Order of the Court, Plaintiffs' opposition was due to be filed no later than 4:05 p.m. on June 11, 2020, in response to the Registrars of Voters Mot. to Dismiss, which they failed to do. As Plaintiffs filed at 4:33 p.m. their Mem. in Opposition was untimely.

1

**INTRODUCTION**

Plaintiffs use 29 pages and over 9,000 words and yet say very little.[2] Unfortunately for Plaintiffs, simply repeating the same flawed arguments does not suddenly make the arguments correct.

Plaintiffs' Memorandum in Opposition is misguided for many reasons, however, given the page limits for a reply and in consideration of the Court's time, the State will only address a few herein,[3] namely: (1) Plaintiffs lack standing as the Virus is not state action and any purported injury is not certainly impending, and (2) the *Purcell* Doctrine strongly favors dismissal.

**I.    Plaintiffs Lack Standing as The Virus Is Not State Action and Any Purported Injury Is Not Certainly Impending.**

Plaintiffs allege that since they would have standing to challenge the constitutionality of the challenged law outside of the current pandemic, then they most certainly can challenge it during a pandemic. Pls.' Mem. in Opp'n to Defs' Mot. to Dismiss 3. Plaintiffs further attempt to explain away their hypothetical injuries by arguing that their purported injuries are not the Virus itself, but the State's laws or action viewed "in the context of the objective danger created by the pandemic[,]" and that challenged laws, "as enforced by Defendants, *interact with* the Covid-19 pandemic to threaten and infringe Plaintiffs' constitutional rights[,]" or that the challenged laws "become unreasonably and severely burdensome during this pandemic." *Id.* at 6 & 11 (emphasis included in original). In attempting to further define their purported injuries, Plaintiffs only further established that, absent the Virus, the challenged provisions are otherwise constitutional.

---

[2] Despite receiving excess pages to respond to Defendants' Motions to Dismiss, Plaintiffs decided to leave out discussion of matters they deemed to be non-jurisdictional. In leaving out any responses to Defendants' 12(b)(6) claims, Plaintiffs have potentially waived their ability to respond to them in the future. However, this will be explored further at a later time.

[3] While not addressed herein, as stated in their Motion to Dismiss, the proper parties are not before the Court in order to accord Plaintiffs complete relief. The State points to the arguments made by the Registrars of Voters in their Motion to Dismiss and Reply in support of that contention.

2

Therefore, Plaintiffs' purported injuries are not based on any state action (a requirement of claims brought under Section 1983 and under Section 2 of the Voting Rights Act), but on the existence of the Virus—remove the Virus from the equation, and Plaintiffs have no claims, and they would vote as they always have without any complaint. As such, Plaintiffs' claims must fail.

Again, in trying to further define their purported injuries, Plaintiffs dig a deeper hole that they cannot climb out of. Plaintiffs correctly state that they must prove their claims by a preponderance of the evidence—more likely than not—evidentiary standard. *Id.* at 6. Where Plaintiffs misstep is when they state *what* they must prove by this standard—principally that "it is more likely than not that they will suffer a severe risk of contracting Covid-19 in the July, August, November, and December election periods, absent injunctive relief from this Court." *Id.* The preponderance of the evidence standard does not somehow change the fact that Plaintiffs' injuries must be "concrete, particularized, and actual or imminent . . . ." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citation removed). The Supreme Court has repeatedly reiterated that a "'threatened injury"—such as the one Plaintiffs are alleging here—"must be *certainly impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not sufficient" to establish Article III standing. *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). Assuming *arguendo* that Plaintiffs are able to meet their preponderance standard in proving their claims, that does not change the fact that their alleged threatened injury must be *certainly* impending rather than "more likely than not" impending. To hold that a plaintiff can establish and prove injury by claiming a "risk" of a future hypothetical injury (such as possibly contracting a disease which fewer than 1% of the population of Louisiana currently has) would be to essentially remove the injury requirement all together. Plaintiffs cannot sufficiently establish an injury in fact when the alleged injury is based on "their fears [or "risk"

as Plaintiffs put it] of hypothetical future harm that is not certainly impending." *Id.* at 416. This lack of real and traceable injury is further borne out in the Governor's recent Executive Order moving Louisiana to Phase II re-opening. That document states that "this gradual re-opening is based on the advance and expertise of medical experts at the Louisiana Department of Health." Proclamation Number 74 JBE 2020 at 2. This same order allows nearly all businesses, such as food service establishments, churches, beauty shops, malls, gyms, and casinos, to open at approximately fifty percent capacity. *Id.*

Plaintiffs attempt to argue that, since other states have established different guidelines surrounding absentee voting, that proves that the State injured Plaintiffs by not making the same changes as other states. *See* Pls.' Mem. in Opp'n 3-15. The Fifth Circuit recently rejected this exact same argument when plaintiffs challenged Texas' absentee voting laws, and stated:

> The Legislature can 'take one step at a time addressing itself to the phase of the problem which seems most acute,' [] without worrying that a rogue district judge might later accuse it of drawing lines unwisely . . . . Texas may take one bite at the apple; it need not swallow it whole. [] That 'the line might have been drawn differently . . . is a matter for the legislature, rather than judicial, consideration.'

*Tex. Democratic Party v. Abbott*, 2020 U.S. App. LEXIS 17564 at *28 (internal citations omitted).

The State does not dispute that the presence of the Virus might alter the process of voting in ways it would not if the Virus otherwise did not exist. However, as Plaintiffs attempt to argue 100 different ways, these changes are not due to any state action—as such, their claims must fail. As with many of Plaintiffs' arguments, the Fifth Circuit also recently rejected the claim that the voting-burdens associated with the Virus are somehow attributed to the State:

> The Constitution is not "offended simply because some" groups "find voting more convenient than" do the plaintiffs because of a state's mail-in ballot rules. *That is true even where voting in person "may be extremely difficult, if not practically impossible," because of circumstances beyond the state's control, such as the presence of the Virus.*

4

*Id.* at *24 (emphasis added) (quoting *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 810 (1969)).

As Plaintiffs' purported injuries are not state action, nor certainly impending, they fail to meet their burden to establish standing. Therefore, their claims must be dismissed.

## II.     The *Purcell* Doctrine Strongly Favors Dismissal.

At the end of their Memorandum in Opposition, Plaintiffs attempt to dismiss the State's *Purcell* arguments by arguing that since it is not jurisdictional, it is not applicable to the present matter. Memo. in. Opposition 26-27. *Purcell* stands for the proposition "that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam); *see also Tex. Democratic Party*, 2020 U.S. App. LEXIS 17564 at *37.

Louisiana's July 11 election is well underway.  Early voting begins Saturday, June 20, 2020.  Registrars are in the final stages of preparing polling places for next week, training poll workers on both regular procedures and additional procedures for social distancing and cleaning and maintaining polling places. Absentee ballots, absentee ballot applications and instructions have been in the hands of voters since February of 2020.  The deadline for requesting absentee ballots for the July 11 election is 25 days from the date of this filing.  The deadline for returning absentee ballots is a mere 28 days from the date of this filing.  Disrupting the July 11 election process, or even threatening to upend it at this point, is exactly the sort of last-minute intrusion into the administration of elections that *Purcell* is intended to prevent.

This doctrine exists because judicial intrusion into elections must account for "considerations specific to election cases." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). These considerations include the fact that "[c]ourt orders affecting elections . . . can themselves result in

5

voter confusion and consequent incentive to remain away from the polls." *Id.* at 4-5. "As an election draws closer, that risk will increase." *Id.* at 5. While *Purcell* is not jurisdictional in nature, given that it exists to prevent court action that would lead to voter confusion, it goes without saying that the correct time for a court to apply *Purcell* would be *before* they take any action, not *after*. Therefore, *Purcell* is properly before the Court at this time. And, given that absentee ballots are already printed, mailed, and many already returned, this exact scenario is the type for which *Purcell* exists. In following *Purcell* and abstaining from interfering in an ongoing election, this Court would assist in eliminating potential confusion among voters and election staff as well as ensuring a greater confidence in the results of the upcoming elections.

## **CONCLUSION**

For the aforementioned reasons, Plaintiffs' claims should be dismissed with prejudice.


Dated: June 12, 2020                           RESPECTFULLY SUBMITTED,

JEFF LANDRY
ATTORNEY GENERAL

*/s/ Angelique Duhon Freel*
Angelique Duhon Freel (La. Bar Roll No. 28561)
Assistant Attorneys General
Louisiana Department of Justice
Civil Division
P. O. BOX 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6017
Facsimile: (225) 326-6098
Email: freela@ag.louisiana.gov

Jason B. Torchinsky*
Jonathan Lienhard**
Phillip M. Gordon*
Dallin Holt**
Holtzman Vogel Josefiak Torchinsky PLLC
45 N. Hill Dr., Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: jtorchinsky@hvjt.law
jlienhard@hvjt.law
pgordon@hvjt.law
dholt@hvjt.law
*admitted *pro hac vice*
***pro hac vice* motions forthcoming

*Counsel for Defendant Attorney General Jeff Landry*

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this 12th day of June 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Jason Torchinsky*
Jason Torchinsky

*Counsel for Defendant Attorney General Jeff Landry*